UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES P. CONNOLLY,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 3:18-cv-00185 (MPS)

## RULING ON THE PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

In this appeal from the Social Security Commission's denial of benefits, plaintiff James Connolly argues that the Administrative Law Judge (ALJ) (1) violated the treating physician rule; (2) failed to develop the record adequately; (3) relied on opinions by an agency medical consultant that referred to documents not in the Record; and (4) erred in evaluating Mr. Connolly's credibility. I agree with Mr. Connolly's first argument and remand the case to the Commissioner.

I assume familiarity with Mr. Connolly's medical history, as summarized in Plaintiff's Summary of Facts, ECF No. 21-1 at 1-18, which the Commissioner "generally adopts," ECF No. 37-1 at 2, and which I adopt and incorporate herein by reference.[1] I also assume familiarity with the ALJ's opinion, the record, and the five sequential steps used in the analysis of disability

---

[1] The Commissioner sets forth several objections to Plaintiff's Summary of Facts, such as the inclusion of facts pertaining to the period prior to July 2013 and the inclusion of a summary of the ALJ's decision. Mr. Connolly, for his part, objects to the inclusion of the supplement to the record filed by the Commissioner. To the extent that any of these disputes are relevant to the Court's analysis, they are addressed in the discussion below.

claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

## I. Standard of Review

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## II. Discussion

Ms. Connolly argues that the ALJ failed to comply with the treating physician rule in his analysis of the November 2014 Opinion of Dr. Shetty and Nurse Gustafson. I agree.[2]

---

[2] Because this claim was filed before March 27, 2017, the treating physician rule applies here. *See Claudio v. Berryhill*, No. 3:17CV1228(MPS), 2018 WL 3455409, at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

The analysis under the treating physician rule follows a two-step process. First, "the ALJ must decide whether the opinion is entitled to controlling weight. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citation and quotation marks omitted). Second, "if the ALJ decides the opinion is not entitled to controlling weight, [he] must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. In doing so, "[the ALJ] must explicitly consider the following, non-exclusive '*Burgess* factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95-96 (citations omitted). After considering these factors, the ALJ must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and alterations omitted). At both steps, "the ALJ must 'give good reasons in [his] notice of determination or decision for the weight [he gives the] treating source's [medical] opinion." *Estrella*, 925 F.3d at 96 (citation and internal quotation marks omitted).

An ALJ's failure to "explicitly" apply the *Burgess* factors is a "procedural error." *Id.* If the "Commissioner has not [otherwise] provided 'good reasons' for [the] weight assignment," the appropriate remedy is remand for the ALJ to "comprehensively set forth [his] reasons." *Id.*; *see also Guerra v. Saul*, 778 Fed. Appx. 75, 77 (2d Cir. 2019) ("To put it simply, a reviewing Court should remand for failure to explicitly consider the *Burgess* factors unless a searching

review of the record shows that the ALJ has provided 'good reasons' for its weight assessment."); *Meyer v. Commissioner of Social Security*, 2019 WL 6271721, at *2 (2d Cir. Nov. 25, 2019) ("A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment.").

**1. The November 2014 Opinion of Nurse Gustafson and Dr. Shetty**

Mr. Connolly challenges the ALJ's analysis of the November 2014 opinion of Nurse Gustafson and Dr. Shetty ("the November 2014 Opinion"), Record ("R.") 385-89.

As an initial matter, the November 2014 Opinion is from an "acceptable medical source," as the ALJ himself concluded. *See, e.g.*, *Griffin v. Colvin*, 2016 WL 912164, at *14 (D. Conn. Mar. 7, 2016) (analyzing questionnaire completed by therapist and co-signed by psychiatrist under the treating physician rule). As in *Griffin*, this is "not a case in which there is no evidence that the co-signing psychiatrist ever personally examined the plaintiff or had an ongoing treatment or a physician-patient relationship." *Id.*; *see, e.g.*, R. at 375-76, 382-84 (treatment notes from Mr. Connolly's appointments with Dr. Shetty). Thus, *Perez v. Colvin*, 2014 WL 4852836, at *26 (D. Conn. Apr. 17, 2014), cited by the Commissioner, does not apply here, and the opinion is analyzed "as having been the treating physician's opinion," *Fritty v. Berryhill*, 2019 WL 289779, *4 (W.D.N.Y. 2019) (internal quotation marks omitted).

In the November 2014 Opinion, Dr. Shetty opined that Mr. Connolly had "marked" "difficulties in maintaining social functioning" and "frequent" "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)." R. at 388. She further opined that Mr. Connolly would be absent from work "[m]ore than three times a month." *Id.* Mr. Connolly argues that the ALJ did not provide "good

4

reasons" for assigning less-than-controlling weight to this opinion at step one of the treating physician rule analysis, and that he failed to explicitly consider all of the *Burgess* factors at step two.

As in *Estrella*, "substantial evidence" supports the ALJ's decision at step one to assign less-than-controlling weight to Dr. Shetty's opinion. Namely, the ALJ pointed to evidence that Nurse Gustafson, co-author of the opinion, suspected that Mr. Connolly might have been malingering.[3] R. at 29; *id.* at 565. Elsewhere, the ALJ notes that Nurse Gustafson at one point obtained a bicycle for him to make transportation easier, but Mr. Connolly "refused to accept it because it might hurt his chances for obtaining Social Security benefits." R. at 565. Although it would have been permissible to conclude, in light of this evidence, that any exaggeration by Mr. Connolly of his symptoms was a product of his condition, as did Ms. Cukar-Capizzi, *see id.* at 574 (concluding that "[t]here is little evidence to suggest that he is malingering or 'faking bad'"), it was also permissible to conclude that Nurse Gustafson's suspicions were well-founded and that they indicate that Dr. Shetty and Nurse Gustafson were not as confident in the severity of Mr. Connolly's impairment as their opinion suggests, and consequently to decline to assign the opinion controlling weight.

The ALJ's application of the treating rule at Step Two, however, suffers from several procedural errors. First, the ALJ provided several reasons for discounting the opinion, but did

---

[3] According to the neuropsychological report, in requesting a neuropsychological evaluation, Nurse Gustafson, Mr. Connolly's long-time therapist, asked for, among other things, "some assessment of Mr. Connolly's ability for work, noting his non-compliance with treatment recommendations." She "wondered if this represented his malingering or if in fact he does meet requirements for Social Security benefits." R. at 565. The author of the neuropsychological report, Ms. Cukar-Capizzi, ultimately concluded that, although Mr. Connolly "exaggerates the severity of his depression, loneliness and somatic complaints . . . [t]here is little evidence to suggest that he is malingering or 'faking bad,' . . . . Rather, his insistence on what is going wrong in his life is most likely a cry for help. Mr. Connolly believes others do not understand how badly he feels and how difficult it is for him to function on a daily basis." *Id*. at 574.

5

not state how much weight he assigned to it.[4] The failure to explicitly state how much weight the ALJ gave to the opinion is not, however, by itself cause for remand. *See, e.g.*, *Swain v. Colvin*, 2017 WL 2472224, at *3 (W.D.N.Y. June 8, 2017) ("[I]t is well-established that the failure to explicitly assign weight to an opinion is harmless in certain situations, such as where the ALJ's decision reflects that the opinion was considered or where the limitations assessed in the opinion are ultimately accounted for in the RFC." (internal quotation marks and citation omitted)) (citing cases); *Moscoso v. Astrue*, 2009 WL 1605547, at *5 (E.D.N.Y. June 8, 2009) (finding that that ALJ complied with the treating physician rule despite failing to "explicitly say how much weight he gave [an opinion]").

Second, the ALJ did not explicitly consider two of the *Burgess* factors—the "frequen[cy], length, nature, and extent of treatment" and "whether the physician is a specialist." With respect to the former, the Second Circuit has held that it is "of heightened importance" where, as in this case, one of the claimed impairments is depression. *Estrella*, 925 F.3d at 97.

Failure to explicitly consider every *Burgess* factor is also not fatal, however, if the ALJ has nonetheless "provided 'good reasons' for [his] weight assessment," *Guerra*, 778 Fed. Appx. at 77, such that the "substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96. Here, the ALJ provided two reasons, in addition to Nurse Gustafson's suspicions of

---

[4] The entirety of the ALJ's discussion of Dr. Shetty's opinion is as follows:

> Nurse Gustafson completed a mental impairment questionnaire dated November 2014, which supports disability due to mental health conditions, finding marked limitations in social functioning and frequent deficiencies in concentration, persistence, or pace (Exhibit B5F). This questionnaire was cosigned by Nitasha Shelly [sic], M.D. While from an acceptable medical source, the limitations assessed are inconsistent with treatment notes showing the claimant with a largely stable mood (Exhibit B11F). Further, Nurse Gustafson noted the possibility of malingering as identified during the psychological evaluation, which detracts from her opinion that the claimant's conditions are disabling (Exhibit B13F). Finally, Nurse Gustafson noted that the claimant could handle his own benefits, which is inconsistent with her findings for frequent deficiencies in concentration, persistence, or pace.

R. 29.

6

malingering, for assigning little or no weight to Dr. Shetty's opinion. For the reasons that follow, these do not constitute "good reasons" for assigning little to no weight to the entirety of Dr. Shetty's opinion, which is what the ALJ did.[5] Thus, I cannot conclude that the substance of the treating physician rule was not traversed.

First, the ALJ points to treatment notes by various providers at the Connecticut Mental Health Center (CMHC) "showing the claimant with a largely stable mood." R. at 29 (citing Exhibit B11F, R. at 460-541). For example, on February 26, 2014, Dr. Greenfield—Dr. Shetty's predecessor—noted that Mr. Connors was "otherwise stable." R. at 460. Similarly, on December 14, 2015, Mr. Connolly's therapist noted that his mental status was "stable." *Id*. at 483; *see also id*. at 489, 493, 498 (same). As Mr. Connolly points out, however, "stable" generally indicates the absence of change, and not necessarily a positive state. Accordingly, some of the same treatment notes that indicate that Mr. Connolly's mood was "stable" also list his mood as "anxious." *See, e.g.*, *id.* at 483, 489. But even if the notations that Mr. Connolly's mood was "stable" might be read to indicate that his mood was healthy, the vast majority of the CMHC treatment notes list Mr. Connolly's mood as "dysphoric" or otherwise indicate that Mr. Connolly's mood was depressed. *See, e.g.*, *id*. at 461-70 (notes from ten appointments with Nurse Gustafson and Dr. Shetty from March 2014 to September 2015, all listing Mr. Connolly's mood as "dysphoric"); *id*. at 481, 485, 487, 490, 494, 496 (treatment notes by Dr. Grunschel spanning November 2015 to April 2016 indicating that Mr. Connolly variously reported his mood as "not good," "no one seems to get that I am miserable," "[f]ine, I'm just lonely," "not

---

[5] It is apparent that the ALJ assigned little to no weight to Dr. Shetty's opinions because his only comments about the November 2014 opinion were that it was "inconsistent" with treatment notes and with Dr. Shetty's opinion that Mr. Connolly's could handle his benefits, and because the ALJ concluded that Mr. Connolly was not disabled, which cannot be squared with Dr. Shetty's opinion that he would miss work more than three days a month, a circumstance the vocational expert found made him unable to work. R. at 83.

7

good since you changed by medicine," and "not good, you don't know what I go through"). Rather than indicating that Mr. Connolly's mood was "largely stable," as the ALJ concluded, *id*. at 29, the CMHC treatment notes indicate that Mr. Connolly's mood was largely anxious and depressed, with occasional notations that he was "stable." Elsewhere, the ALJ points to a treatment note from Bridges, where Mr. Connolly began receiving mental health treatment beginning in June 2016, which indicates that Mr. Connolly's mood was "euthymic." *Id*. at 29; *id*. at 399. But of the dozen or so treatment records at Bridges, only three indicate that his mood was "euthymic," while the remaining notes indicate that his mood was "depressed" and, occasionally, "anxious." *Id*. at 390-426. The Second Circuit has warned against "cherry-pick[ing] from the record to support [a] conclusion," particularly in the context of psychiatric illness. *Gough v. Saul*, 2020 WL 475745, at *2 (2d Cir. Jan. 13, 2020). The Second Circuit has also noted the often cyclical nature of mental illness. *See Estrella*, 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). In short, occasional references to a "euthymic" mood or a "stable" mental status are not inconsistent with Dr. Shetty's opinion, particularly in light of the large majority of treatment notes spanning much of the relevant time period indicating that Mr. Connolly's mood was generally depressed and/or anxious.

The ALJ also notes that Dr. Shetty's opinion indicates that Mr. Connolly "could handle his own benefits," which is "inconsistent with her findings for frequent deficiencies in concentration, persistence, or pace." R. at 29; *id*. at 389 (answering "yes" to the question "[c]an your patient manage benefits in his or her own best interest?"). As Mr. Connolly points out,

there is no apparent contradiction here. Frequent deficiencies in concentration, persistence, or pace do not necessarily mean that an individual is unable to manage his own disability benefits.

In sum, the only evidence the ALJ cites that tends to undermine Dr. Shetty's opinion is the indication in the neuropsychological report that Nurse Gustafson wondered whether Mr. Connolly was malingering when he failed to comply with some of her treatment recommendations. The other evidence cited by the ALJ either represents cherry-picked evidence or simply does not undermine the opinion. Moreover, the ALJ nowhere addresses Dr. Shetty's opinion that Mr. Connolly would be absent from work three days or more due to his impairments. This failure is particularly significant because the vocational expert testified that such a rate of absenteeism would preclude all work. *Id*. at 83. I thus cannot conclude that, despite his procedural errors, the ALJ has nonetheless provided sufficient "good reasons" for dismissing the opinion of Dr. Shetty, such that the "substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96.

The Commissioner now argues that Dr. Shetty's opinion deserves little weight because it was completed on a pre-printed form, refers to paragraph B criteria, and is not expressed in terms of functional limitations. But the ALJ does not mention these considerations in his decision, and Second Circuit cases applying *Estrella* make clear that the subject of the *Estrella* inquiry is the *ALJ's* reasoning. *See Guerra v. Saul*, 778 Fed. Appx. 75, 77 (2d Cir. 2019) ("To put it simply, a reviewing Court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that *the ALJ* has provided 'good reasons' for its weight assessment.") (emphasis added); *Meyer v. Commissioner of Social Security*, 2019 WL 6271721, at *2 (2d Cir. Nov. 25, 2019) ("A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that *the ALJ* has

9

provided 'good reasons' for its weight assessment.") (emphasis added). Any reasons the Court relies on must be fairly attributable to the ALJ's decision. *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) ("For our purposes . . . it is sufficient that the ALJ did not say this and certainly did not explain it. The treating physician rule requires an explanation by the SSA, not the court." (citing, among others, *S.E.C. v. Chenery Corp.*, 332 U.S. 194 (1947)). It is not for the Court to provide *post-hoc* "good reasons" for the weight assigned a medical opinion, based on the parties' briefs and its own review of the Record. For the same reason, the September 2014 opinion of Dr. Shetty also cannot serve as a "good reason" for rejecting Dr. Shetty's November 2014 opinion. This opinion, the inclusion of which in the Record is hotly disputed by the parties, does not appear to have been relied upon by the ALJ.[6] There is no reference to it in the ALJ's decision, explicit or implicit, and the opinion was not assigned an exhibit number.

The Commissioner also argues that any error in applying the treating physician rule was harmless. An error in the application of the treating physician rule is harmless if "application of the correct legal standard could lead to only one conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010); *see also Schall v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand."). Here, I cannot conclude that the application of the correct legal standard could lead to only one conclusion, such that the ALJ's assignment of little or no weight to Dr. Shetty's opinion was harmless. Specifically, I cannot conclude—despite Dr. Shetty's opinion that Mr. Connolly would be absent for three days a month or more, and despite the deference generally owed to a treating source opinion—that the only conclusion supported by substantial evidence is

---

[6] Because consideration of the documents in the supplemental record, ECF No. 34, does not affect the outcome of this case, I need not resolve the parties' dispute over whether these documents are properly before the Court.

that Mr. Connolly would not experience such a rate of absenteeism. It is undisputed that Mr. Connolly had several severe psychiatric impairments, including Tourette's syndrome, bipolar disorder, depressive disorder, and anxiety disorder. R. at 22. As discussed above, treatment notes consistently indicate that Mr. Connolly's mood was anxious and/or depressed. Furthermore, there is significant evidence that Mr. Connolly was largely dependent on his family to manage his day-to-day affairs, including scheduling and driving him to his medical appointments. *See, e.g.*, *id.* at 567 (indicating that Mr. Connolly's mother scheduled his medical appointments); *id.* at 51 (indicating that Mr. Connolly does not have his driver's license and relies on his mother and step-father for rides); *id.* at 62 (indicating that Mr. Connolly does not go grocery shopping or clothes shopping by himself). Mr. Connolly also has not been employed since 2002. This constitutes substantial evidence in support of Dr. Shetty's opinion that Mr. Connolly would be absent for three or more days per month. Of course, this is not to say that there is not also substantial evidence for rejecting Dr. Shetty's November 2014 opinion; it is only to say that rejecting her opinion is not the *only* reasonable conclusion supported by substantial evidence.

**2. The February 2016 Opinion of Ms. Cukar-Capizzi and Dr. Rita McCleary**

Mr. Connolly argues that the ALJ also erred by giving little weight to the February 2016 opinion of Ms. Cukar-Capizzi and Dr. Rita McCleary (the "February 2016 Opinion"). The ALJ assigned little weight to the opinion because Ms. Cukar-Capizzi is a student and not an examining or treating physician, and thus not an "acceptable medical source." R. at 29. The ALJ also identified some inconsistencies in the report and noted the limited duration of her evaluation of Mr. Connolly. *Id.* Mr. Connolly argues that the opinion is still subject to the treating physician rule because it was cosigned by Dr. McCleary, a Supervising Psychologist.

11

ECF No. 21-2 at 21; R. at 577. As the Commissioner points out, however, there is no indication that Dr. McCleary ever *treated* Mr. Connolly. Accordingly, the ALJ did not violate the treating physician rule by declining to give the opinion controlling weight. *See, e.g.*, *Depoto v. Colvin*, 2017 WL 417196, at *4 (D. Conn. Jan. 31, 2017) (holding that the ALJ was not required to give controlling weight to an opinion co-signed by a doctor where it did not appear that the doctor had treated the claimant); *Payne v. Astrue*, 2011 WL 2471288, at *5 (D. Conn. June 2, 2011) ("The controlling weight given to the opinion of a treating physician is based upon the insight that may be gained through the direct and extended relationship between a treating physician and patient.").

Even though there is no evidence that Dr. McCleary treated Mr. Connolly, the ALJ nonetheless erred by failing to consider her opinion as from an acceptable medical source. *Depoto v. Colvin*, cited by Mr. Connolly, relies in turn on *Payne v. Astrue*¸ 2011 WL 2471288, at *5 (D. Conn. June 21, 2011). In *Payne*, after concluding that the treating physician rule did not apply because there was no evidence that the co-signing physicians treated the claimant, Judge Hall found that the ALJ nonetheless erred by deeming the opinion to be solely that of the other signatory. *Id.* Judge Hall explained that the opinion was nonetheless still attributable to the co-signing physicians, even if they were not "treating" physicians, and "[t]he opinion of even a non-examining physician is entitled to consideration in accordance with the guidelines for evaluating all medical opinions . . . whereas the opinion of a physician's assistant is entitled to consideration as an 'other source.'" *Id.* Here, the February 2016 opinion was cosigned by Dr. McCleary, who is a psychologist, and thus an acceptable medical source under 20 C.F.R. § 404.1502(a)(2), even if she is not a *treating* source. Given that Dr. McCleary signed the February 2016 Opinion, it is not clear why it should not also be considered her opinion, and thus evaluated as a medical

12

opinion from an acceptable medical source under 20 C.F.R. § 404.1527(c). *See Payne*, 2011 WL 2471288, at *5 ("If the ALJ did not deem [the co-signed opinions] to be the opinions of the co-signing physicians, it is not clear why. There is no apparent indication that either opinion was not independently considered and endorsed by the co-signing physician."); 20 C.F.R. § 404.1527(a)(1) (defining "medical opinion" as a statement from an "acceptable medical source," without any limitation to only *treating* sources); 20 C.F.R. § 404.1527(c) (setting forth how a "medical opinion" is evaluated).

Mr. Connolly makes only a cursory argument that the ALJ erred in analyzing the February 2016 Opinion, ECF No. 21-2 at 21, 22, and does not identify any functional limitation from the opinion that the ALJ erroneously rejected. Thus, it may be that the failure to treat the February 2016 Opinion as from an acceptable medical source is harmless. But because I conclude that the ALJ's rejection of the November 2014 Opinion necessitates remand, I need not resolve this issue. On remand, the ALJ should evaluate the opinion as from an "acceptable medical source."

I do not reach Mr. Baker's other arguments "because upon remand and after a de novo hearing, [the ALJ] shall review this matter in its entirety." *Delgado v. Berryhill*, No. 3:17CV54(JCH), 2018 WL 1316198, at *15 (D. Conn. Mar. 14, 2018).

### III. Conclusion

For the reasons set forth above, Mr. Connolly's motion for judgment on the pleadings, ECF No. 18, is GRANTED to the extent that the case is remanded to the Commissioner, and the Commissioner's motion to affirm, ECF No. 37, is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
February 18, 2020